**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TENNESSEE**
**AT KNOXVILLE**

| | | |
|---|---|---|
| **AMANDA WALKER** | ) | |
| **F/K/A AMANDA HASKINS** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | Civil Action No. _____ |
| **v.** | ) | |
| | ) | |
| **ACCOUNTS RESEARCH, INC., and** | ) | <u>Jury Trial Demanded</u> |
| **TERRY JOE GUNTER** | ) | |
| | ) | |
| **Defendants.** | ) | |

## COMPLAINT

## <u>JURISDICTION AND VENUE</u>

1. Jurisdiction of this Court arises under 28 U.S.C. § 1331, 28 U.S.C. § 1367, and 15 U.S.C. § 1692k(d).

2. This action arises out of Defendants' violations of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 et seq. ("FDCPA") and state law in their illegal efforts to collect a consumer debt from Plaintiff.

3. Venue is proper in this District because the acts and transactions occurred here, and Plaintiff resides here.

## <u>PARTIES</u>

4. Plaintiff Amanda Walker (f/k/a Amanda Haskins) ("Plaintiff") is a natural person who resides in Knox County, Tennessee, a "consumer" as defined by 15 U.S.C. § 1692a(3).

5.     Defendant Accounts Research, Inc. (hereinafter "Accounts Research") is a "debt collector" as defined by 15 U.S.C. § 1692a(6) that maintains Guy Greer, 201 Center Park Dr., Ste 1070, Knoxville, TN 37922-2105 as its registered agent.

6.     Defendant Terry Joe Gunter (hereinafter "Gunter") is a natural person whom, on information and belief, resides in Knox County, Tennessee, is employed by Accounts Research as a collection manager or a collection agent, and is a "debt collector" as defined by 15 U.S.C. § 1692a(6).

## FAIR DEBT COLLECTION PRACTICES ACT

7.     The FDCPA is a federal statute which regulates debt collectors in the collection of consumer debts. **See 15 U.S.C. §§ 1692 *et seq.***

8.     Congress passed the FDCPA because "[t]here is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors . . . , [e]xisting laws and procedures for redressing these injuries are inadequate to protect consumers . . . , and [m]eans other than misrepresentation or other abusive debt collection practices are available for the effective collection of debts." **15 U.S.C. §§ 1692 (a), (b), and (c).**

9.     The purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." **15 U.S.C. § 1692 (e).**

10.    The Sixth Circuit reaffirmed in *Stratton v. Portfolio Recovery Associates, LLC*, 770 F.3d. 443, 448-449 (6th Cir. 2014) that: "'The Fair Debt Collection Practices Act is an extraordinarily broad statute' and must be construed accordingly. *Frey v. Gangwish*, 970

F.2d 1516, 1521 (6th Cir. 1992)"; *see also Currier v. First Resolution Inv. Corp.*, 762 F.3d 529, 533 (6th Cir. 2014).

## FACTUAL ALLEGATIONS

11. Defendants have alleged Plaintiff incurred an obligation to pay money arising out of a transaction in which the money, property, insurance or services which are the subject of the transaction are primarily for personal, family or household purposes, and the obligation is therefore a "debt" as defined by 15 U.S.C. § 1692a(5), namely, a medical debt alleged to be originally owed to Westside Gastrointestinal Specialists, PLLC (hereinafter "Westside").

12. The debt with Westside was incurred sometime prior to July 2016.

13. On information and belief, prior to receiving medical services from Westside, Plaintiff completed, dated and signed a Patient Registration Form (PRF) similar to the one found on Westside's website. **Copy filed as exhibit 1 to this Complaint. See also - http://westsidegi.net/wp-content/uploads/2013/11/Patient-Registration-Form-2013.pdf**

14. The PRF states that Plaintiff "can be billed for (35%) **collection or attorney's fees necessary to collect payment**" and "may also be billed a 1½% monthly service charge for a delinquent account" but does not state that interest will be charged on the account balance. **See exhibit 1.** (emphasis added)

15. Plaintiff made a few payments to Westside from at least July 2016 until January 2017.

16. During the time that that account was still with Westside, the account was not charged interest or late fees and the remaining balance on the account was $553.25. **Copy of the**

**billing statements and collection letters from Westside are attached hereto as Collective Exhibit 2**.

17.     Sometime prior to April 20, 2017 Plaintiff's debt was transferred to Accounts Research for collection from Plaintiff.

18.     Thereafter Plaintiff received collection communications and was subjected to collection acts from Accounts Research, in an attempt to collect this debt.

19.     Accounts Research does not maintain (i.e., actually employ or implement) procedures to avoid errors under the FDCPA.

20.     Any procedures maintained (i.e., actually employed or implemented) by Accounts Research to avoid errors under the FDCPA failed to avoid using false, deceptive, misleading, or unfair communications when communicating with consumers in connection with the collection of debts.

*False, Deceptive, Misleading, and Unfair Communications*

*April 20, 2017 Collection Letter*

21.     On or about April 20, 2017, Accounts Research sent Plaintiff a form collection letter dated April 20, 2017, which Plaintiff received on or about April 22, 2017.  **Copy filed as exhibit 3 to this Complaint.**

22.     The April 20, 2017 collection letter was the initial communication from Accounts Research to Plaintiff in connection with collection of the debt.

23.     The April 20, 2017 collection letter sought to collect a purported consumer debt incurred for personal, family or household purposes, and not for business purposes, specifically the balance owed on a delinquent medical services account.

24.     The April 20, 2017 collection letter conveyed information regarding the debt, including that Westside was alleged to be owed the debt, and the amount alleged as owed, and is a "communication" as defined by 15 U.S.C. § 1692a(2).

25.     The April 20, 2017 collection letter stated:

> Collection Agent For: Westside Gastrointestinal Spec
> Creditor Account #:     5379
> Agency Account #:      0000911706
> Balance Due:              $827.37

**See exhibit 3.**

26.     The April 20, 2017 collection letter also stated:

> Your account has been assigned to office for collection.  Should you wish to discuss this request for payment in full, call the number listed above.
>
> This communication is from a debt collector.  This is an attempt to collect a debt.  Any information obtained will be used for that purpose.
>
> Balance may increase due to interest and fees.

**See exhibit 3.**

27.     The April 20, 2017 collection letter conveyed information regarding the debt, including that Westside was alleged to be owed the debt, and the amount alleged as owed, and is a "communication" as defined by 15 U.S.C. § 1692a(2).

28.     Within five (5) days after Accounts Research sent the initial communications to Plaintiff, she had not paid the debt.

29.     The April 20, 2017 collection letter indicated a balance of $827.37, an increase of $274.12 from Westside's last statement to Plaintiff showing a balance of only $553.25. **See exhibit 2, p. 7; exhibit 3.**

30. Accounts Research included amounts allegedly owed in the April 20, 2017 collection letter for collection fees not billed to Plaintiff and that were not a necessary expense paid by Westside to collect payment on the account, and for interest that Plaintiff had not agreed in the PRF to pay Westside, and that had not been billed to Plaintiff. **See exhibits 1, 2 and 3.**

31. The April 20, 2017 collection letter also offered no explanation or breakdown for how the increase in balance above what Westside had last told Plaintiff she owed was calculated, such that a least sophisticated consumer would understand the increase. **See exhibit 3.**

32. By requesting the amount of $827.37 in the April 20, 2017 collection letter, Accounts Research violated 15 U.S.C. §§1692e, 1692e(2)(A), 1692e(2)(B), and 1692e(10)'s prohibitions against false, deceptive, or misleading communications that would be confusing to the least sophisticated consumer as to how much is allegedly owed because it (a) falsely states the character, amount, and legal status of the debt, and (2) the compensation which Accounts Research may lawfully receive, §1692e(8)'s prohibition against providing credit information which is known or should be known to be false, and §§ 1692f, and 1692f(1)'s prohibition against using unfair and unconscionable means to collect or attempt to collect an amount not authorized by the agreement creating the debt or permitted by law.

33. The FDCPA, 15 U.S.C. §1692g(a)(1) requires that:

> (a) Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing -- (1) the amount of the debt.

34.     Within five (5) days after Accounts Research sent the initial communication, Plaintiff had not paid the debt.

35.     Account Research's April 20, 2017 collection letter, the "initial communication", failed to correctly state the amount of the debt as required by 15 U.S.C. § 1692g(a)(1) because it did not inform the Plaintiff of the additional charges that had been added to the debt incurred by her with Westgate or the applicable interest rate. *See Miller v. McCalla, Raymer, Padrick, Cobb, Nichols & Clark, LLC,* 214 F.3d  872 (7th Cir. 2000); *Stonecypher v. Finkelstein Kern Steinberg & Cunningham*, 2011 U.S. Dist. LEXIS 88319 (E.D. Tenn. 2011)

36.     Accounts Research's initial communication failed to disclose the correct amount of the debt, and within five days after the "initial communication" with Plaintiff in connection with collection of the debt in the April 20, 2017 collection letter, Accounts Research failed to send Plaintiff a written notice that disclosed the correct amount of the debt, in violation of 15 U.S.C. § 1692g(a)(1).

*May 16, 2017 Voicemail to Plaintiff Mother's Cellular Phone &*

*May 22, 2017 Collection Calls to Plaintiff's Employer*

37.     The FDCPA bars debt collectors from communicating with third parties other than the consumer, the consumer's attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector, except under certain very limited circumstances enumerated by statute, i.e., acquiring the consumer's "location information". 15 U.S.C. §§ 1692a(7), 1692c(b).

38.     15 U.S.C. § 1692a(7) defines the term "location information" as "a consumer's place of abode and his telephone number at such place, or his place of employment."

39. 15 U.S.C. § 1692b(1) and (3) provide that "[a]ny debt collector communicating with any person other than the consumer for the purpose of acquiring location information about the consumer shall –

identify himself, state that he is confirming or correcting location information concerning the consumer, and, only if expressly requested, identify his employer;…

(3)     not communicate with any such person more than once unless requested to do so by such person or unless the debt collector reasonably believes that the earlier response of such person is erroneous or incomplete and that such person now has correct or complete location information;…"

40. On or about May 16, 2017, Gunter made a collection call to the cellular telephone of Plaintiff's mother in connection with collection of the debt.

41. On information and belief, Accounts Research was already in possession of Plaintiff's home and work address and her work telephone number when the collection call was made to her mother.

42. Gunter left a voicemail on Plaintiff's mother's cellular phone that said: "This is Terry Gunter, tell Amanda Haskins to call me at 865-675-2101."

43. The collection call made by Gunter to Plaintiff's Mother was a "communication" as defined by 15 U.S.C. § 1692a(2) in connection with collection of a debt.

44. Before Gunter made the collection call to Plaintiff's mother, Plaintiff had not given prior consent directly to Gunter or Account Research for them to communicate with any third party in connection with the collection of this debt.

45. On or about May 22, 2017, Gunter made collection calls to Plaintiff's employer in connection with collection of the debt.

46. On information and belief, Accounts Research was already in possession of Plaintiff's home and work address and her work telephone number when the collection calls were made to her employer.

47. The collection call made by Gunter to Plaintiff's employer was a "communication" as defined by 15 U.S.C. § 1692a(2) in connection with collection of a debt.

48. On May 22, 2017, when Gunter called Plaintiff's employer, he spoke to the receptionist and identified himself as "Terry Gunter" and asked if Plaintiff worked there.

49. The receptionist responded, "Yes, but she is on a call and I can put you in her voicemail".

50. Gunter replied, "I'll wait", to which the receptionist said, "she's on a conference call" and tried to transfer Gunter to Plaintiff's voicemail.

51. This was apparently unacceptable for Gunter who hung up and called right back asking for Plaintiff again.

52. Upon information and belief, Gunter gave a different name for himself when he called right back.

53. The receptionist then transferred Gunter to Plaintiff's voice mail and he left a message which simply stated, "This is Terry, you need to call me back".

54. Before Gunter made the collection calls to Plaintiff's employer, she had not given prior consent directly to Gunter or Accounts Research for them to communicate with any third party in connection with the collection of the debt.

55. Defendants communicated with a third party in connection with collection of a debt and for purposes other than to acquire "location information" about the Plaintiff, in violation of 15 U.S.C. § 1692b(1).

56. Defendants communicated with a third party in connection with the collection of a debt, without Plaintiff's prior consent being given directly to Defendant, without the express permission of a court of competent jurisdiction, and not as reasonably necessary to effectuate a post judgment judicial remedy, in violation of 15 U.S.C. § 1692c(b).

57. The voicemail message as described in paragraph 48 above, was left in violation of §§1692d(6) (failure to disclose identity), 1692e(11) (failure to disclose that the communication is from a debt collector), and 1692f.

58. As a result of the illegal FDCPA collection communications by Defendants, Plaintiff has suffered actual damages by Defendants in the form of emotional distress that has caused her anger, anxiety, fear, frustration, upset, humiliation, and embarrassment, amongst other negative emotions.

*Communications That Were Overshadowing and Inconsistent with Plaintiff Right to Dispute*

59. The FDCPA 15 U.S.C. §1692g(b) states:

    Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt.

60. The communications by Gunter with Plaintiff's mother and employer occurred prior to the expiration of the 30-day period after Plaintiff's receipt of the collection letter would make the least sophisticated consumer confused and/or uncertain as to his or her rights, in violation of 15 U.S.C. §§ 1692e and 1692e(10), and these communications within the thirty-day period described in 15 U.S.C. § 1692g(a) both overshadowed and were inconsistent with the disclosure of Plaintiff's right to dispute the debt, in violation of 15 U.S.C. § 1692g(b).

*June 9, 2017 Collection Letter*

61.     On or about June 9, 2017, Accounts Research sent Plaintiff a collection letter dated June 9, 2017 in care of Plaintiff's employer. **Copy filed as exhibit 4 to this Complaint.**

62.     The June 9, 2017 collection letter is a subsequent communication from Accounts Research in connection with collection of the debt.

63.     The June 9, 2017 collection letter sought to collect a purported consumer debt incurred for personal, family or household purposes, and not for business purposes, specifically the balance owed for a medical debt alleged to be owed to Westside.

64.     The FDCPA provides:

> § 1692c. Communication in connection with debt collection
>
> . . . . (b) Communication with third parties. Except as provided in section 1692b of this title, without the prior consent of the consumer given directly to the debt collector, or the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a postjudgment judicial remedy, a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector. . . .

65.     Account Research's act of sending the June 9, 2017 collection letter in "care of" Plaintiff's employer when it had Plaintiff's current home address, but chose not to use it, undermines the protections that the FDCPA was meant to secure for a consumer's personal and financial privacy. *See Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015 (9th Cir. 2012).

66.     By sending the collection letter to Plaintiff's employer, Accounts Research violated 15 U.S.C. § 1692c(b).

67. The June 9, 2017 collection letter indicated a balance of $841.01, an increase of $13.64 from the April 20, 2017 collection letter from Accounts Research, and a $282.76 increase from Westside's last statement to Plaintiff showing a balance of only $553.25. **See exhibits 2, p. 7, 3, and 4.**

68. The June 9, 2017 collection letter also offered no explanation or breakdown for the additional increase in balance above the April 20, 2017 collection letter, such that a least sophisticated consumer would understand the increase. **See exhibits 3 and 4.**

69. The June 9, 2017 collection letter stated that: "It would appear that the sensible response by you would be to pay this claim without delay." **See exhibit 4.**

70. Plaintiff was deeply offended, upset, frustrated, and humiliated regarding this language in light of the fact that she had previously written to Westside on October 24, 2016 and explained that:

> I understand that you would like me to pay off my medical bill right away and I would love to be able to do that. However I am only able to make small monthly payments. I owe several doctors because of my recent medical issues and need to make payments to each of them ever month.  I am currently working 3 jobs in order to pay these medical bills and would appreciate any leniency and consideration of the fact that I am trying. … I am doing the best I can with how much income I have.

**Copy of October 24, 2016 letter sent to Westside filed as exhibit 5 to this Complaint.**

71. By requesting the amount of $841.01 in the June 9, 2017 collection letter, Accounts Research violated 15 U.S.C. §§1692e, 1692e(2)(A), 1692e(2)(B), and 1692e(10)'s prohibitions against false, deceptive, or misleading communications that would be confusing to the least sophisticated consumer as to how much is allegedly owed because it (a) falsely states the character, amount, and legal status of the debt, and (2) the compensation which Accounts Research may lawfully receive, §1692e(8)'s prohibition

against providing credit information which is known or should be known to be false, and §§ 1692f, and 1692f(1)'s prohibition against using unfair and unconscionable means to collect or attempt to collect an amount not authorized by the agreement creating the debt or permitted by law.

72. By using the language in its June 29, 2017 collection letter - "It would appear that the sensible response by you would be to pay this claim without delay" **[See exhibit 4]**, Accounts Research violated 15 U.S.C. §1692d as it engaged in conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with collection of the debt, and 15 U.S.C. § 1692f as it used unfair or unconscionable means to collect or attempt to collect any debt.

*June 12, 2017 Cease and Desist Letter Sent by Plaintiff*

73. Following receipt of the June 9, 2017 collection letter from Accounts Research, on June 12, 2017, Plaintiff sent a cease and desist letter to Accounts Research via U.S. Mail. **Copy filed as exhibit 6 to this Complaint.**

74. The June 12, 2017 letter clearly stated: Please stop all communication with me about this debt. **See Exhibit 6.**

75. Despite the cease and desist letter sent to Accounts Research, it continued to communicate with Plaintiff and third parties.

76. Specifically, on or about September 22, 2017, Gunter, using the name "Terry Gunter" again called Plaintiff's place of employment.

77. During the September 22, 2017 telephone call to Plaintiff's employer, Gunter asked the receptionist to speak with Plaintiff and stated that he was not calling from a company but rather it was a personal matter.

78.    In response to Gunter's call, the receptionist transferred the call to Plaintiff's voice mail, but no message was left by Gunter.

79.    Accounts Research also called Plaintiff's cellular telephone from numbers, 865-675-2100, 865-671-2101, and, possibly, other numbers, after she had notified them that she wished all communications in connection with collection of the debt to cease.

80.    By continuing to contact the Plaintiff at work, or on her cellular phone, after being notified that Plaintiff wished all communications to cease, Defendants violated U.S.C. §§1692b(1), 1692c(c), 1692d, and 1692f.

### Collection Lawsuit

81.    On June 30, 2017, Westside and Accounts Research filed a civil summons and sworn affidavit against Plaintiff (collection lawsuit). **Copy filed as exhibit 7 to this Complaint.**

82.    Accounts Research hired J. Tyler Roper (Roper) to represent Westside in the collection lawsuit filed against Plaintiff. **See exhibit 7, p. 1.**

83.    On information and belief, an employee of Accounts Research prepared the civil summons, and listed Roper as the attorney representing Westside. **See exhibit 7, p. 1.**

84.    On information and belief, an employee of Accounts Research prepared the sworn affidavit, and Elizabeth Blosser, an employee of Westside, signed the sworn affidavit. **See exhibit 7, p. 3.**

85.    The sworn affidavit is the only evidence presented to the state court for proof of the debt owed by Plaintiff. **See exhibit 7, p. 3.**

86.    The civil summons states that the amount owed by Plaintiff is "$1,288.38 including attorney fees and service of process." **See exhibit 7, p. 1.**

87. The sworn affidavit allegedly signed by Ms. Blosser, under oath, on June 28, 2017, states:

    1.      I have under control, the books and records of [Westside], of which firm I am the MANAGER.

    2.      Those books and records show the amount due and owing from [Plaintiff] is $746.88 Principal, $116.50 interest (from Jun 16 through July 17 at 18% A.P.R.), Attorney fees of $350.00, $75.00 for service of process; Total $1,288.28. Plus, pre-judgment and post-judgment interest plus court cost.

    3.      This amount is correct and reflects the current amounts shown by the books, records, and invoices of [Westside], after allowance of all credit of which [Westside] is entitled, as the Affiant believes, being familiar with the books and records of [Westside].

**See exhibit 7, p. 3, ¶¶ 1-3.**

88. The civil summons and sworn affidavit were subsequent communications from Accounts Research in connection with collection of the debt.

89. The collection lawsuit sought to collect a purported consumer debt incurred for personal, family or household purposes, and not for business purposes.

90. The amounts that Westside and Accounts Research included in the collection lawsuit for the principal balance, collection costs, interest, attorney fees and process server fees that Plaintiff allegedly owed were for amounts, including interest, not agreed to by Plaintiff in the PFR, not billed to Plaintiff, and were not incurred by Westside or Accounts Research in connection with filing the collection lawsuit. **See exhibits 1, 2 and 7.**

91. Accounts Research paid the filing fees necessary to file the collection lawsuit against Plaintiff and paid the service fees necessary to attempt proper service of the collection lawsuit on Plaintiff.

92. The statements sent to Plaintiff by Westside do not show a principal balance on the account that exceeds $553.25. **See collective exhibit 2.**

93. The PRF that, on information and belief, was signed by Plaintiff, does not state that any interest will be added to the account. **See exhibit 1.**

94. The "principal balance" stated in the sworn affidavit in the amount of $746.88 includes collection fees of 35% that were not a necessary expense paid by Westside to collect payment on the account. **See exhibit 7, p. 3, ¶ 2.**

95. The interest amount stated in the sworn affidavit in the amount of $116.50 exceeds the amount allowed under Tennessee state law (18% A.P.R.), even if Plaintiff did sign a PFR with Westside. **See exhibit 7, p. 3, ¶ 2; Tenn. Code Ann. § 47-14-103; Tenn. Code Ann. § 47-14-123.**

96. On information and belief, the amount of attorney fees ($350.00) and process server fees ($75.00) included in the sworn affidavit, were never incurred or paid by Westside or Accounts Research for the purpose of filing the collection lawsuit or any other reason in connection with collection of the debt. **See exhibit 7, p. 3, ¶ 2.**

97. By misrepresenting that Plaintiff may be responsible for and attempting to collect from Plaintiff amounts for collection fees that were not a necessary expense paid by Westside to collect payment on the account, interest in an amount not allowed by state law, and attorney fees and process server fees that were never incurred or paid by Westside or Accounts Research, Accounts Research falsely represented the character, amount and legal status of the debt in violation of 15 U.S.C. § 1692e(2)(A), falsely represented the compensation which it may lawfully receive for collection of the debt in violation of 15 U.S.C. § 1692e(2)(B), threatened to take and actually took action that cannot be legally taken in

violation of 15 U.S.C. § 1692e(5), and communicated credit information which is known or which should be known to be false in violation of 15 U.S.C. ¶ 1692e(8), all of which is the use of a false, deceptive, and misleading representation or means in connection with collection of the debt to collect or attempt to collect the debt, in violation of 15 U.S.C. §§ 1692e and 1692e(10).

98.  By attempting to collect collection fees, interest, attorney fees and process server fees that were not expressly authorized by the agreement creating the debt or permitted by law, Accounts Research used unfair and unconscionable means to collect or attempt to collect the debt, in violation of 15 U.S.C. §§ 1692f and 1692f(1).

## *Continued Contact after Knowledge Consumer was Represented by Counsel*

99.  As stated above, Accounts Research hired Roper to represent Westside in the collection lawsuit filed against Plaintiff. **See exhibit 7, p. 1.**

100.  After being served with the collection lawsuit, Plaintiff retained an attorney, Brent S. Snyder (Snyder), to represent her with respect to the debt, and, on or about July 11, 2017, Snyder contacted Roper to inform him of his representation.

101.  During court on July 25, 2017 Roper and Snyder agreed that Plaintiff would pay $50.00 per month towards the debt, and Roper and Snyder engaged in several conversations regarding the debt and payment over the following several weeks.

102.  The knowledge that Plaintiff is represented by an attorney with respect to the debt is imputed from Roper, as agent, to Accounts Research, as principal.

103.  Despite having knowledge of representation Defendants engaged in communication with the Plaintiff as previously set forth in violation of U.S.C. §§1692c(a)(2), 1692d, and 1692f.

*September 22, 2017 Equifax Credit Report*

104.    Equifax is a consumer credit reporting agency as defined in 15 U.S.C. § 1681a(f), and regularly engages in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing credit reports to third parties.

105.    On September 22, 2017 Plaintiff obtained copies of her credit report, which showed that Accounts Research communicated information to Equifax that Plaintiff owed the alleged debt, and that the balance owed is $840. **Copies of relevant pages of September 22, 2017 Equifax credit report filed as Exhibit 8.**

106.    Each reporting of the alleged debt to Equifax is a "communication" in an attempt to collect a debt as defined by 15 U.S.C. § 1692a(2).

107.    By communicating to Equifax that Plaintiff owed a different amount than alleged in the collection lawsuit, sworn affidavit, and collection letters described herein, Accounts Research violated 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(2)(B), 1692e(8), 1692e(10), 1692f and 1692f(1).

*Requesting Different Amounts*

108.    By requesting different amounts in the collection letters, collection lawsuit, and credit report, Accounts Research made conflicting statements as to the amount owed by Plaintiff that would be confusing to the least sophisticated consumer as to how much was allegedly owed and resulted in Accounts Research making a false representation (a) of the character, amount, or legal status of any debt, and (b) of the compensation which may be lawfully received by any debt collector for collection of any debt, in violation of 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(2)(B), and 1692e(10).

*False Representation or Implication That Communication is From an Attorney*

109. Accounts Research hired Roper to represent Westside in the collection lawsuit filed against Haskins.  **See exhibit 8, p. 1.**

110. On information and belief, Accounts Research regularly hires Roper to allow it to list him as the attorney of record on lawsuits filed on behalf of Accounts Research's clients.

111. On information and belief, Roper is not even aware he is the attorney of record until he see the court's docket for the particular court date or is contacted by an attorney representing the consumer being sued or appears at a court hearing in front of a state court judge to pursue a judgment.

112. On information and belief, after attempting to collect the debt directly from Plaintiff by credit reporting, sending collection letters and making telephone calls, Accounts Research drafted and prepared the collection lawsuit and sworn affidavit and listed Roper as the attorney for Westside on the civil summons.  **See exhibit 8, p. 1.**

113. On information and belief, Roper did not enter into a representation agreement with Westside, either orally or in writing, for his representation of Westside in state court.

114. On information and belief, Roper did not review any of the facts of Westside's claims against Plaintiff in order to make determination if, or when, a collection lawsuit should be filed against her, including the amount of principal balance, interest, collection costs, attorney fees, or process server fees, to be included in the amount demanded in the civil summons or in the sworn affidavit.

115. On information and belief, Roper did not have any direct personal involvement in the drafting and preparation of the civil summons or the sworn affidavit.

116. On information and belief, Roper did not approve the filing of the collection lawsuit against Plaintiff.

117.   Listing Roper as Westside's attorney, falsely represents or implies to the least sophisticated consumer that Roper was professionally involved in Plaintiff's file before the collection lawsuit was filed.

118.   The communications in the form of the civil summons and sworn affidavit were false, deceptive, and misleading because they were not "from" an attorney in any meaningful sense of the word, and some degree of attorney involvement is required before communications will be considered "from" an attorney within the meaning of the FDCPA.

119.   The listing of Roper as Westside's attorney is sufficient to give the least sophisticated consumer the false impression that the civil summons and sworn affidavit were communications from an attorney, in violation of 15 U.S.C. § 1692e(3).

120.   Upon being served the collection lawsuit, the least sophisticated consumer, may reasonably believe that an attorney has reviewed his or her file and has determined that he or she is a candidate for legal action.

121.   Listing Roper as Westside's attorney when he had not been meaningfully involved with Plaintiff's account violates 15 U.S.C. §1692e's prohibition against false, deceptive, or misleading communications because it falsely implies that an attorney, acting as an attorney, is involved in collection of the debt.

### *Requests for Issuance of Garnishment That Contain Amounts of Postjudgment Interest That Exceed Amount Allowed Under State Law*

122.   A "communication" under the FDCPA means conveying the information regarding a debt directly or indirectly to any person through any medium.  15 U.S.C. § 1692a(2).

123.   A garnishment is an indirect "communication" in connection with collection of a debt.

124. On July 26, 2017, an "agreed judgment" was entered by the state court for the amount of $1,288.38 against Haskins, plus interest at the rate of 18.00%, although there is no evidence that neither Westside or Plaintiff or anyone representing Westside or Plaintiff in state court signed the "agreed judgment", effectively making it a default judgment. **Copy of judgment filed as exhibit 9 to this Complaint.**

125. With the exception for judgments "based on a statute, note, contract or other writing", when the judgment was entered against Plaintiff on July 26, 2017, the postjudgment interest rate in Tennessee was 6.25%. **See Tenn. Code Ann. §§ 47-14-121.**

126. As stated above, the sworn affidavit is the only evidence presented to the state court for proof of the debt owed by Plaintiff. **See exhibit 7, p. 3.**

127. Although there demand in the civil summons stated it was for "$1,288.38 including attorney fees and service of process", no copy of a contract signed by Plaintiff is attached to the civil summons stating that Westside is entitled to attorney fees or interest, thus, no attempt was made to introduce such a document to the state court. **See exhibit 7.**

128. As no evidence was provided to the state court that the debt alleged to be owed by Plaintiff is "based on a statute, note, contract or other writing", the correct calculation of interest on the judgment amount from the date of the judgment to the issuance of the garnishment, at the postjudgment interest rate of 6.25%, is $12.80.

129. On or before September 22, 2017, Westside and Accounts Research filed a request with the state court for issuance of a garnishment to Plaintiff's employer which stated that the amount of the judgment entered in the collection lawsuit is $1,288.38 but listed the amount of interest due on the garnishment request as $41.23, based on a usurious rate of

more than three (3) times the enforceable rate. **Copy of garnishment filed as exhibit 10 to this Complaint.**

130.     Even if it is determined that the correct calculation of postjudgment interest on the judgment entered in Harbin's collection lawsuit from the date of the judgment to the issuance of the garnishment is 18.00%, the amount of interest owed on the judgment amount is only $36.85, and the amount demanded still exceeds the amount allowed under Tennessee state law.

131.     Due to the addition of postjudgment interest or fees that exceeds the amount allowed under state law, Accounts Research attempted to collect an amount from Plaintiff that is illegal under Tennessee law and that she does not owe.

132.     As a result of the wrongful garnishment Westside and Accounts Research requested to be issued to Plaintiff's employer, she has paid $ ???? to the state court clerk to keep Westside and Accounts Research from attempting to collect the judgment by garnishment of 25% of her wages after deductions for federal taxes and social security, which amount was forwarded by the state court clerk to Accounts Research, and paid $25.00 to the state court clerk to request that the garnishment be stayed.

133.     Due to the addition of postjudgment interest that exceeds the amount allowed under state law, Accounts Research has attempted to collect amounts from Plaintiff that she does not owe, in violation of 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(2)(B), 1692e(5), 1692e(8), 1692e(10), 1692f, and 1692f(1).

*Summary*

134.     The above-detailed conduct by Defendants in connection with collection of the debt and in an attempt to collect the debt was conduct in violation of multiple provisions of the

FDCPA including, but not limited to the above-cited provisions of the FDCPA.

### *Respondeat Superior Liability*

135. In addition to his individual liability under the FDCPA, the acts and omissions of Gunter as agent for Accounts Research and who communicated with Plaintiff as further described herein, were committed within the time and space limits of his agency relationship with his principal, Accounts Research.


136. The acts and omissions by Gunter were incidental to, or of the same general nature as, the responsibilities he was authorized to perform by Accounts Research in collecting consumer debts.

137. By committing these acts and omissions against Plaintiff, Gunter was motivated to benefit his principal, Accounts Research.

138. Accounts Research is therefore liable to Plaintiff through the Doctrine of Respondeat Superior for the intentional and negligent acts, errors and omissions done in violation of federal law by the debt collectors employed as agents by Accounts Research including, but not limited to violations of the FDCPA, in their attempts to collect the debt from Plaintiff.

### **TRIAL BY JURY**

139. Plaintiff is entitled to and hereby respectfully demands a trial by jury. **US Const. amend. 7. Fed.R.Civ.P. 38.**

### **CAUSES OF ACTION**

### **COUNTS I-XVII**

**VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT**

**15 U.S.C. §§ 1692b(1), 1692c(b), 1692c(c), 1692d, 1692d(6), 1692e,**

**1692e(2)(A), 1692e(2)(B), 1692e(3), 1692e(5), 1692e(8), 1692e(10),**

**1692e(11), 1692f, 1692f(1), 1692g(a)(1), and 1692g(b)**

140. Plaintiff incorporates by reference all of the above paragraphs as though fully stated herein.

141. The foregoing acts and omissions of Defendants constitute numerous and multiple violations of the FDCPA including, but not limited to each and every one of the above-cited provisions of the FDCPA, 15 U.S.C. §§ 1692 et seq., with respect to Plaintiff.

142. As a result of Defendants' FDCPA violations, Plaintiff is entitled to actual damages pursuant to 15 U.S.C. § 1692k(a)(1); statutory damages in an amount up to $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A); and, reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1692k(a)(3) from each and every Defendant.

## COUNT XVIII

### INVASION OF PRIVACY BY INTRUSION UPON SECLUSION UNDER THE FDCPA AND STATE LAW

143. Plaintiff incorporates by reference all of the paragraphs of this Complaint as though fully stated herein.

144. Congress explicitly recognized a consumer's inherent right to privacy in collection matters in passing the Fair Debt Collection Practices Act, when it stated as part of its findings:

> **Abusive debt collection practices contribute** to the number of personal bankruptcies, to marital instability, to the loss of jobs, and **to invasions of individual privacy**.

**15 U.S.C. § 1692(a) (emphasis added).**

145. Congress further recognized a consumer's right to privacy in financial data in passing the Gramm Leech Bliley Act, which regulates a broad range of "financial institutions" whose definition includes debt collectors, when it stated as part of its purposes:

> It is the policy of the Congress that **each financial institution has an affirmative and continuing obligation to respect the privacy of its customers** and to protect the security and confidentiality of those customers' nonpublic personal information.

**15 U.S.C. § 6801(a) (emphasis added).**

146. Defendants intentionally and/or negligently interfered, physically or otherwise, with the solitude, seclusion and private concerns or affairs of Plaintiff, namely, by unlawfully attempting to collect a debt and thereby invaded Plaintiff's personal and financial privacy.

147. Defendants intentionally and/or negligently caused emotional harm to Plaintiff by engaging in highly offensive conduct in the course of collecting this debt, thereby invading and intruding upon Plaintiff' right to personal and financial privacy.

148. Plaintiff has a reasonable expectation of privacy in Plaintiff's solitude, seclusion, and or private concerns or affairs.

149. The conduct of these Defendants, in engaging in the above-described illegal collection conduct against Plaintiff, resulted in intrusions and invasions of privacy by these Defendants which occurred in a way that would be highly offensive to a reasonable person in that position.

150.    As a result of such invasions of privacy, Plaintiff is entitled to actual damages in an amount to be determined at trial by a jury; from each and every Defendant.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that judgment be entered against each and every Defendant:

## COUNTS I-XVII

## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT

## 15 U.S.C. §§ 1692b(1), 1692c(b), 1692c(c), 1692d, 1692d(6),  1692e,

## 1692e(2)(A), 1692e(2)(B), 1692e(3), 1692e(5), 1692e(8),  1692e(10),

- ## 1692e(11), 1692f, 1692f(1), 1692g(a)(1), and 1692g(b)

- for an award of actual damages pursuant to 15 U.S.C. § 1692k(a)(1) against each and every Defendant and for Plaintiff;

- for an award of statutory damages of $1,000.00 pursuant to 15 U.S.C. §1692k(a)(2)(A) against  each and every Defendant and for Plaintiff;

- for an award of costs of litigation and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3) against each and every Defendant and for Plaintiff;

## COUNT XVIII

## INVASION OF PRIVACY BY INTRUSION UPON SECLUSION
## UNDER THE FDCPA AND STATE LAW

- for an award of actual damages from each and every Defendant for the emotional distress suffered as a result of the intentional and/or negligent FDCPA violations and intentional and/or negligent invasion of privacy in an amount to be determined at trial by a jury; and for Plaintiff; and

- for such other and further relief, as may be just and proper.

3/21/18                              Respectfully submitted,

                                     **AMANDA WALKER**


                                     s/      Brent S. Snyder
                                     Brent S. Snyder, BPR #21700
                                     2125 Middlebrook Pike
                                     Knoxville, TN 37921
                                     (865)546-2141
                                     Brentsnyder77@gmail.com


                                     s/      Alan C. Lee
                                     Alan C. Lee, BPR # 012700
                                     P. O. Box 1357
                                     Talbott, TN 37877-1357
                                     (423) 581-0924
                                     aleeattorney@gmail.com

                                     Attorneys for Plaintiff